J-A13032-21

2021 PA Super 142

SITUS PROPERTIES, INC. : IN THE SUPERIOR COURT OF
 : PENNSYLVANIA
 :
 v. :
 :
 :
 :
JENKINS COURT REALTY CO., LP :
 :
 Appellant : No. 2170 EDA 2020

Appeal from the Order Entered September 28, 2020
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2020-12065

BEFORE: BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:    **FILED JULY 9, 2021**

 Jenkins Court Realty Co., LP ("Jenkins Court") purports to appeal from

the September 28, 2020, order entered in the Court of Common Pleas of

Montgomery County, which denied Jenkins Court's petition to strike a

commercial real estate broker's lien filed by Situs Properties, Inc. ("Situs

Properties").  After a careful review, we quash this appeal.

 The trial court has aptly set forth the relevant facts and procedural

history, in part, as follows:

  On January 15, 2019, [Situs Properties, which is a licensed
real estate broker,] and [Jenkins Court] executed an Exclusive
Agency Agreement ("Agreement") whereby [Jenkins Court]
appointed [Situs Properties] as its "sole and exclusive agent" for
the lease or sale of [Jenkins Court's] property located at *** Old
York Road, Jenkintown Borough, Montgomery County,

---

* Former Justice specially assigned to the Superior Court.

Jenkintown, PA…(the "Property"). [The Property is a multi-storied, multi-tenant building.]

Per the Agreement, [Situs Properties] was to receive a commission upon procurement of a tenant:

A commission is earned, due and payable to AGENT when the OWNER has entered into a written lease agreement with a tenant…during the term of this Agreement, that remains valid and in full force and effect at the time the commission is due and payable (hereinafter referred to as 'procures a tenant…').

The Agreement further provided that [Situs Properties] "shall also be paid a commission (i) on options, renewals, and all subsequent periods of occupancy…to be paid at the commencement of the renewal lease term or subsequent periods of occupancy."

At the time the parties entered into the Agreement, Outback Steakhouse of Florida, LLC ("Outback") was a tenant of the Property pursuant to a May 1, 1992, Lease Agreement (the "Lease"). Under the Third Amendment to the Lease of May 1, 1992, [Jenkins Court] granted Outback as tenant two consecutive options to renew the Lease, each for a period of five years commencing on May 1, 2020, and May 1, 2025. On March 10, 2019, [Jenkins Court's] principal, Phil Pulley, contacted [Situs Properties] and asked that [Situs Properties] "follow up" on the lease extension for Outback:

Re OUTBACK please follow up on a lease extension as we are now one year out. There [*sic*] sales are up lots!!!
If they are going to leave
LONGHORN
Chickie and Petes
Buffalo Wild Wings

Pursuant to the March 10, 2019, email from [Jenkins Court] asking that [Situs Properties] perform follow-up work, [Situs Properties] contacted Sharon Rogers-Barron, Real Estate Asset Manager at Bloomin' Brands, Inc. to discuss Outback's lease renewal. [Situs Properties] engaged in a number of communications between this Outback representative and [Jenkins Court] in which Outback's lease renewal was discussed. Further communications between [Situs Properties], [Jenkins Court], and Outback, as well as more detailed discussions of

- 2 -

efforts expended by [Situs Properties] to effectuate Outback's renewal, are described in [Situs Properties'] marketing reports for the months of March, April, May, and June 2019. Following these communications and work on the part of [Situs Properties], Outback exercised its first option to renew the Lease on June 5, 2019, with the additional term commencing May 1, 2020, and expiring April 30, 2025. [Situs Properties] sent [Jenkins Court] an invoice for its commission for its role in effectuating renewal of Outback's release on April 28, 2020. [Jenkins Court] declined to pay [Situs Properties'] commission, providing the following reason to explain its refusal to pay:

> As you know Governor Wolff's [*sic*] shut down of the State due to the Covid-19 Pandemic has left many business [*sic*] struggling. As a result[,] Outback Steakhouse has not paid rent for March, April or May. In addition[,] they are requesting to be released from paying rent for the duration of the year. Therefore, no commissions will be paid until this issue is resolved with Outback.

On June 2, 2020[,] [Situs Properties] sent notice to [Jenkins Court] of its intent to lien the Property under the Commercial Real Estate Broker Lien Act, 68 P.S. § 1051 *et seq*….In [the] same letter, [Situs Properties] explained its position that any failure to pay rent by Outback as related to challenges associated with COVID-19 would does [*sic*] not negate [Jenkins Court's] obligation to pay its commission to [Situs Properties].

Trial Court Opinion, filed 12/23/20, at 1-3 (citations to record and emphasis omitted).

On July 23, 2020, Situs Properties filed in the trial court a commercial real estate broker's lien in the amount of $27,361.00 against the subject Property owned by Jenkins Court. On August 28, 2020, Jenkins Court filed a petition to strike the lien.

Therein, Jenkins Court presented various claims: the lien should be stricken as Situs Properties did not procure Outback as a tenant; Outback was

not ready, willing, and able to lease the property; Situs Properties did not preserve a right to a commission as it did not list Outback in its protected list; the notice of the lien encompassed the entire property as opposed to just the portion of the property leased to Outback; it would be inequitable for Situs Properties to receive a commission when Jenkins Court has not received any rent from Outback due to the COVID-19 pandemic; and the notice of the lien was not recorded within 90 days of any default. On September 25, 2020, Situs Properties filed a response in opposition.

By order entered on September 28, 2020, the trial court denied Jenkins Court's petition to strike the broker's lien, and on October 23, 2020, Jenkins Court filed a notice of appeal. The trial court directed Jenkins Court to file a Pa.R.A.P. 1925(b) statement, Jenkins Court timely complied, and the trial court filed a Pa.R.A.P. 1925(a) opinion on December 23, 2020. In its opinion, the trial court urges this Court to quash Jenkins Court's appeal on the basis it has been taken from a non-appealable interlocutory order.

On appeal, Jenkins Court sets forth the following issues in its "Statement of Questions Involved" (verbatim):

> 1. Did the Trial court err in holding that the instant Appeal is an interlocutory, non-appealable order and should be quashed?
>
> 2. Did the Trial Court err by denying Appellant's Petition to Strike Broker's Lien without a hearing where there were disputed issues of fact raised by the pleadings?
>
> 3. Did the Trial Court err in denying Appellant's Petition to Strike Broker's Lien where the Lien violated the Commercial Real Estate Broker's Lien Act, 68 P.S. § 1051 *et seq*?

- 4 -

Jenkins Court's Brief at 5 (suggested answers omitted).

Preliminarily, we must determine whether this appeal is properly before us since "the question of appealability implicates the jurisdiction of [this Court]." **_Jacksonian v. Temple University Health System Foundation_**, 862 A.2d 1275, 1279 (Pa.Super. 2004) (quotation and quotation marks omitted). Generally, "[a]n appeal may be taken from: (1) a final order or an order certified as a final order; (2) an interlocutory order as of right; (3) an interlocutory order by permission; or (4) a collateral order." **_In re Estate of Cella_**, 12 A.3d 374, 377 (Pa.Super. 2010) (citations and quotation omitted).

In the case _sub judice_, Jenkins Court contends this Court has jurisdiction pursuant to Pennsylvania Rule of Appellate Procedure 341(b)(1), pertaining to appeals from final orders. Specifically, Jenkins Court asserts a docketed notice of a commercial real estate broker's lien, and a subsequent order refusing to strike the lien, disposes of all claims and of all parties.

Alternatively, Jenkins Court contends this Court has jurisdiction pursuant to Pennsylvania Rule of Appellate Procedure 311(a)(1), pertaining to interlocutory appeals as of right from orders affecting judgments. In this vein, Jenkins Court contends the July 23, 2020, broker's lien, and the trial court's subsequent September 28, 2020, order refusing to strike the lien, are to be given the effect of a judgment, as well as an order refusing to strike a judgment.

J-A13032-21

Under our Rules of Appellate Procedure, a final order is one that disposes of all claims and of all parties or is entered as a final order pursuant to Pa.R.A.P. 341(c).[1] **See** Pa.R.A.P. 341(b). With regard to interlocutory appeals that may be taken as of right, Pa.R.A.P. 311 relevantly provides:

> (a) **General rule.**--An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from:
>
>> (1) *Affecting judgments*.--An order refusing to open, vacate, or strike off a judgment. If orders opening, vacating, or striking off a judgment are sought in the alternative, no appeal may be filed until the court has disposed of each claim for relief.

Pa.R.A.P. 311(a)(1) (emphasis in original).

In determining whether the trial court's order at issue falls within the purview of either Pa.R.A.P. 341(b)(1) or Pa.R.A.P. 311(a)(1), we must examine and interpret the Commercial Real Estate Broker Lien Act ("the Broker Lien Act"), 68 P.S. §§ 1051-1063, pursuant to which Situs Properties

---

[1] Pa.R.A.P. 341(c) provides the following:

> **(c) Determination of finality.**--When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the trial court or other government unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims and parties shall not constitute a final order.

Pa.R.A.P. 341(c) (emphasis in original). Jenkins Court admits that it did not seek a determination of finality under Pa.R.A.P. 341(c). **See** Jenkins Court's Brief at 10.

- 6 -

filed its notice of a lien. In so doing, we keep in mind the following relevant legal precepts:

> In matters of statutory interpretation, our standard of review is *de novo* and our scope of review is plenary. When interpreting a statute, we strive to ascertain the intent of the General Assembly in enacting the law under review. The plain language of a statute is the best indication of the General Assembly's intent, and where the statutory language is clear and unambiguous, we must give effect to the plain language thereof. We read the words of a statute in context, not in isolation, and in a manner so as to give meaning to each and every provision.

***Philadelphia Gas Works v. Pennsylvania Public Utility Commission***, ___ Pa.___, 249 A.3d 963, 970 (2021) (citations omitted).

The Broker Lien Act grants a commercial real estate broker a right to a lien so long as the requirements of the Act are met. ***See*** 68 P.S. § 1053 (setting forth requirements for broker to have the right to a lien); 68 P.S. § 1056 (setting forth the requirements for a lien to attach). Further, 68 P.S. § 1057, pertaining to the notice of a lien, relevantly provides that "[t]he notice of lien shall state the name of the claimant, the name of the owner, a description of the property upon which the lien is being claimed, [and] the amount for which the lien is claimed…." 68 P.S. § 1057.

After a commercial real estate broker files notice of a lien, Section 1058

of the Broker Lien Act provides the procedure for the enforcement of the lien.[2]

Specifically:

> **§ 1058. Enforcement of lien**
>
> **(a) Commencement of proceedings.—**A broker may bring suit to enforce the lien in the court of common pleas in the county where the lien is filed by filing a complaint as set forth under subsection (e).
>
> **(b) Commercial real estate in more than one county.—** Where a claim has been filed in more than one county as provided by section 6(d), proceedings to obtain judgment upon all the claims may be commenced in any of the counties, and the judgment shall be res adjudicata as to the merits of the claims properly filed in other counties.  The judgment may be transferred

_____

[2] Section 1056, pertaining to the attachment of a lien, includes a provision for the satisfying of a lien in the event the broker files a lien, but the purchase, lease, or conveyance fails to occur.  Specifically, Section 1056(h) provides:

> **(h) Satisfaction of the lien.--**In the event a lien is recorded upon the procurement of a person or entity that is ready, willing and able to purchase, lease or otherwise accept a conveyance of commercial property and the conveyance fails to occur through no fault or condition of the owner, the lien recorded by the broker pursuant to this section shall be satisfied of record by the broker, whereupon the property shall be freed and discharged from such lien. If the broker does not voluntarily satisfy the lien, the owner may demand the filing of a complaint pursuant to section 8(f) or commence an action against the broker seeking as relief the satisfaction or striking of the lien. Upon finding that the lien was recorded in bad faith or the refusal to satisfy the lien was in bad faith, a court shall award the owner the amount of the reasonable expenses, including attorney fees and court costs, incurred by the owner as a result of the recording of the lien or refusal to satisfy the lien.

68 P.S. § 1056(h) (bold in original). Jenkins Court does not aver the conveyance failed to occur in this case as contemplated by Subsection 1056(h).

to such other county by filing of record a certified copy of the docket entries in the action and a certification of the judgment and amount, if any. The prothonotary of the court to which the judgment has been transferred shall forthwith index it upon the judgment index.

**(c) Time limitations.—**The broker claiming a lien shall, except as set forth under subsection (d), within two years after recording the lien, commence proceedings to enforce the lien. Failure to commence proceedings within two years after recording the lien shall extinguish the lien.

**(d) Lien based on option to purchase.—**A broker claiming a lien based upon an option to purchase shall, within six months after the transfer or conveyance of the commercial real estate pursuant to the exercise of the option to purchase, commence proceedings to enforce the lien. Failure to commence proceedings within this time shall extinguish the lien.

**(e) Complaint and defendants to the action.—**A complaint under this section shall contain a brief statement of the contract or agreement on which the lien is founded, the date when the contract or agreement was made, a description of the services performed, the amount due and unpaid and a description of the property that is subject to the lien. The plaintiff shall make all interested parties, of whose interest he is notified or has knowledge, defendants to the action. The practice and procedure shall be governed by the Pennsylvania Rules of Civil Procedure and all other rules and procedures relating to civil actions except to the extent inconsistent with the provisions of this section.

**(f) Praecipe of the owner.—**The prothonotary, upon praceipe of the owner, shall enter a rule upon the person claiming the lien to file a complaint. If a complaint is not filed within 20 days after service of the rule, upon praecipe of the owner of the property the lien shall be extinguished.

**(g) Satisfaction or release.—**Whenever a claim for lien which has been filed with the prothonotary is paid, the claimant shall mark the docket satisfied within 30 days of receipt of payment.

**(h) Costs.—**The cost of proceedings, including reasonable attorney fees and prejudgment interest due to the prevailing party, shall be borne by the nonprevailing party or parties. If more than one party is responsible for the costs, fees and prejudgment interest, the costs, fees and prejudgment interest

shall be equitably apportioned by the court among the responsible parties.

68 P.S. § 1058 (bold in original).

Additionally, Section 1062 of the Broker Lien Act indicates that "[j]udgment upon a claim shall be revived within each recurring five-year period. The practice and procedures to revive judgment shall be governed by 42 Pa.C.S. § 5526 (related to five year limitation) and the Pennsylvania Rules of Civil Procedure." 68 P.S. § 1062.

Applying the rules of statutory interpretation, we conclude the plain language of the Broker Lien Act does not contemplate that the filing of the broker's lien, or the trial court's refusal to strike the lien, disposes of all claims and of all parties. Rather, if the lien is not paid or otherwise satisfied, the broker must take appropriate and timely action to enforce the lien or the lien will extinguish. *See* 68 P.S. § 1058.

Moreover, although the trial court's order denied Jenkins Court's petition to strike the lien, the order does not impact Jenkins Court's right to raise various defenses after Situs Properties files a complaint to enforce the lien. Thus, for purposes of Pa.R.A.P. 341(b)(1), the trial court's order denying Jenkins Court's petition to strike the lien is not a final order. *See generally Lubetsky v. Dean*, 142 A.2d 359, 359 (Pa.Super. 1958) (confirming that "[n]o appeal lies from an order discharging a rule to strike off a mechanic's lien as such order is interlocutory, not being a definitive decree or judgment.

- 10 -

If a final order is made granting judgment on the…mechanic's lien, an appeal may be taken.") (citation omitted).

Furthermore, the Broker Lien Act specifically distinguishes between "liens" and "judgments." *See **Philadelphia Gas Works***, ***supra*** (setting forth rules of statutory interpretation). The clear and plain language of the Broker Lien Act indicates that the broker's lien is a precursor to an action for judgment thereon. ***See id.*** As indicated *supra*, the Act provides separate provisions for a broker to claim a lien and then enforce the lien in order to secure a judgment. ***See*** 68 P.S. §§ 1053, 1056, 1057, 1058. The docketing of the lien gives notice of the existence of the lien to third parties, but it does not amount to a judgment. ***See id.***

Thus, contrary to Jenkins Court's contention, the Broker Lien Act does not provide that a docketed lien is to be given the effect of a judgment. Accordingly, we find no merit to Jenkins Court's contention that the trial court's order refusing to strike a lien is the equivalent of an order refusing to strike a judgment. Therefore, the September 28, 2020, order is not an interlocutory order appealable as of right under Pa.R.A.P. 311(a)(1), pertaining to orders affecting judgments.[3]

---

[3] We note Jenkins Court did not ask for or receive permission to appeal the interlocutory order in accordance with Pa.R.A.P. 312, and Jenkins Court has not provided this Court with any argument as to whether the order could satisfy the collateral order doctrine under Pa.R.A.P. 313.

For all of the aforementioned reasons, we conclude the trial court's September 28, 2020, order denying Jenkins Court's petition to strike the broker's lien is interlocutory, and thus, we quash this appeal.

Appeal quashed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/9/2021